In the
United States Court of Appeals
for the Second Circuit

———————————————

August Term 2024
Argued:  April 1, 2025
Decided: February 25, 2026

———————————————

No. 24-1661

———————————————

UNITED STATES OF AMERICA
*Appellee,*
v.
WILLIAM JIMENEZ, AKA FLIP,
*Defendant-Appellant.*

———————————————

Appeal from the United States District Court
for the Southern District of New York
No. 20-cr-122, Denise L. Cote,
District Court Judge.

———————————————

Before:  SACK, PÉREZ, and MERRIAM, *Circuit Judges.*

Defendant-Appellant William Jimenez pled guilty to a charge under 18 U.S.C. § 922(g)(1) of possessing ammunition after a felony conviction.  The District Court principally sentenced Jimenez to 105 months' imprisonment and three years of supervised release.  The District Court also imposed the three special conditions of supervised release relevant to this appeal.  First, Jimenez must submit to searches of his electronic devices upon reasonable suspicion of a violation of a condition of supervised release or unlawful conduct.  Second, Jimenez must complete twenty hours of community service per week when unemployed without excuse.  Third, Jimenez must participate in an outpatient mental health counseling program, which to the extent practicable and appropriate, is to include cognitive behavioral therapy techniques.  On appeal, Jimenez challenges these

1

24-1661
*United States v. Jimenez*

special conditions as lacking justification in the relevant sentencing factors, along with other arguments. Jimenez also challenges his term of imprisonment, arguing that an intervening change in law regarding the calculation of his Guidelines range warranted resentencing on a prior remand. We conclude that the District Court did not abuse its discretion in imposing the relevant special conditions, and that the appeal waiver in Jimenez's plea agreement bars the challenge to his term of imprisonment. As a result, for the reasons set forth below, we **AFFIRM** the judgment of the District Court.

---

JACOB R. FIDDELMAN (Danielle R. Sassoon, *on the brief*), Assistant United States Attorneys, *for* Edward Y. Kim, Acting United States Attorney for the Southern District of New York, New York, NY, *for Appellee.*

SARAH BAUMGARTEL, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant.*

---

2

24-1661
*United States v. Jimenez*

MYRNA PÉREZ, *Circuit Judge*:

Defendant-Appellant William Jimenez pled guilty to a charge under 18 U.S.C. § 922(g)(1) of possessing ammunition after a felony conviction. The District Court principally sentenced Jimenez to 105 months' imprisonment and three years of supervised release. The District Court also imposed seven special conditions of supervised release, three of which are at issue in this appeal. First, Jimenez must submit to searches of his electronic devices upon reasonable suspicion of a violation of a condition of supervised release or unlawful conduct. Second, Jimenez must complete twenty hours of community service per week when unemployed without excuse. Third, Jimenez must participate in an outpatient mental health counseling program, which to the extent practicable and appropriate, is to include cognitive behavioral therapy techniques. On appeal, Jimenez argues these special conditions are "unreasonable" and "were not supported by the record or based on Jimenez's individual characteristics," along with other arguments. Appellant's Br. at 3. Jimenez also challenges his term of imprisonment, arguing that an intervening change in law regarding the calculation of his Guidelines range warranted resentencing on a prior remand.

3

We conclude that the record adequately supports the imposition of the three challenged special conditions, and that the appeal waiver in Jimenez's plea agreement bars the challenge to his term of imprisonment. As a result, for the reasons set forth below, we affirm the judgment of the District Court.

## I.   Background

In January 2020, Defendant-Appellant William Jimenez sold fentanyl-laced heroin to an undercover New York City Police Department detective on two occasions, using his phone to arrange the transactions. That same month, Jimenez shot an individual in the knee and was arrested in his vehicle shortly after. The arresting officers searched Jimenez and his vehicle and discovered approximately twenty small bags of crack cocaine in Jimenez's left shoe as well as approximately eight small glassines of heroin and a bag of marijuana in the vehicle's center console.

Jimenez was indicted on five counts. Count one charged Jimenez with possessing ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1). Count two charged Jimenez with discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and (iii). The final three counts each charged Jimenez with distributing and possessing with

intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C).  Eventually, Jimenez pled guilty to count one of the indictment pursuant

to a plea agreement.

The plea agreement contained an express waiver of appeal.  Jimenez agreed

not to appeal "any sentence within or below the Stipulated Guidelines Range of

84 to 105 months' imprisonment."  App'x at 26.  That Stipulated Guidelines Range

was calculated based on an application of Section 2K2.1(a)(2) of the Sentencing

Guidelines, which establishes a base offense level of 24 where a defendant has two

prior "felony convictions of either a crime of violence or a controlled substance

offense."  U.S. Sent'g Guidelines Manual § 2K2.1(a)(2) (U.S. Sent'g Comm'n 2021).

Prior to the instant offense, Jimenez had six criminal convictions, including a 2011

robbery conviction and a 2015 conviction for criminal sale of a controlled

substance, which were the basis for applying Section 2K2.1(a)(2).

The District Court principally sentenced Jimenez to 105 months'

imprisonment and three years of supervised release.  The sentence included seven

"special"[1] conditions of supervised release, three of which are challenged in this

---

[1] Conditions of supervised release are classified as either "mandatory" or "discretionary" conditions.  *See United States v. Maiorana*, 153 F.4th 306, 311 n.4 (2d Cir. 2025).  The discretionary conditions can be further divided into "standard" conditions, which then-applicable Sentencing Guidelines

24-1661
*United States v. Jimenez*

appeal. First, Jimenez must "submit [his] person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer" upon "reasonable suspicion" that Jimenez violated "a condition of supervision or [engaged in] unlawful conduct" (the "search condition"). App'x at 91. Second, Jimenez must "complete 20 hours of community service per week in a program approved by the Probation Officer" if he is "not employed [or] excused from employment" (the "community service condition"). *Id.* Third, the District Court included a condition requiring a "cognitive behavioral treatment program under the guidance and supervision of the probation officer, until such time as [Jimenez] [is] released from the program by the probation officer" (the "mental health treatment condition"). *Id.*

Jimenez previously appealed several of his supervision conditions, and by order dated March 18, 2024, we vacated, in part, the three conditions listed above due to the District Court's failure to provide sufficient explanations. *See United*

---

recommended in most cases, and "special" conditions, which the Guidelines suggested for "appropriate" cases. *Id.*; *see also* U.S. Sent'g Guidelines Manual § 5D1.3 (U.S. Sent'g Comm'n 2021). This case deals with the last category. Notably, the 2025 Sentencing Guidelines no longer include language recommending either the "standard" or "special" conditions. *See* U.S. Sent'g Guidelines Manual § 5D1.3(b)(2)–(3) (U.S. Sent'g Comm'n 2025); *United States v. McAdam*, 165 F.4th 688, 694 (2d Cir. 2026).

*States v. Jimenez*, No. 22-1022-cr, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary

order).  In doing so, we remanded with instructions for the District Court to

"determine whether each of the special conditions that were imposed without

specific justification is reasonably related to the factors set forth in the Sentencing

Guidelines § 5D1.3(b) and, if so, to explain the reasons for imposing the

condition."  *Id.* at *4.

On remand, the District Court resentenced Jimenez and reimposed the

relevant special conditions, with some modifications.[2]  In doing so, the District

Court elaborated on its reasons for imposing the contested conditions.  This second

appeal followed.

## II.  **Discussion**

Jimenez makes two overarching challenges on appeal.  First, he asks this

Court to vacate three of the special conditions of supervised release.  Second, he

seeks a remand so that the District Court can reconsider his term of imprisonment.

---

[2]      In particular, the District Court altered the mental health treatment condition, which now requires
that Jimenez "participate in an outpatient mental health counseling program" which "shall include regular
therapy sessions that, to the extent practicable and as determined to be appropriate by the therapy provider,
include cognitive behavioral therapy techniques."  App'x at 141.

24-1661
*United States v. Jimenez*

## A. Challenges to Special Conditions of Supervised Release

We generally review challenges to special conditions of supervised release for procedural and substantive reasonableness under an abuse of discretion standard. *See United States v. Sims*, 92 F.4th 115, 122 (2d Cir. 2024); *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019). "When a challenge to a condition of supervised release presents an issue of law," our review is de novo because "any error of law necessarily constitutes an abuse of discretion." *Boles*, 914 F.3d at 111 (quoting *United States v. McLaurin*, 731 F.3d 258, 261 (2d Cir. 2013)).

When a district court imposes special conditions, procedural reasonableness requires that the court "must 'make an individualized assessment'" of the need for each condition, and "make findings specific to the defendant, connecting those findings to the applicable § 3553(a) factors that would justify including the special condition." *Sims*, 92 F.4th at 123 (quoting *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019)). "The failure to articulate this reasoning on the record is error," but "we may still uphold a condition if the district court's reasoning is self-evident in the record . . . and the condition meets the purposes of supervised release." *United States v. Robinson*, 134 F.4th 104, 111 (2d Cir. 2025) (citation modified).

8

24-1661
*United States v. Jimenez*

Substantively, district courts have discretion to impose conditions of supervised release, so long as those conditions are reasonably related to certain statutory sentencing factors, including:

> (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*United States v. Carlineo*, 998 F.3d 533, 536 (2d Cir. 2021) (quoting U.S. Sent'g Guidelines Manual § 5D1.3(b) (U.S. Sent'g Comm'n 2018)); *see also* 18 U.S.C. § 3583(d)(1); *United States v. Lawrence*, 139 F.4th 115, 125 (2d Cir. 2025) (assessing a condition's connection to the sentencing factors as part of its substantive reasonableness analysis). Additionally, district courts "must also consider how a special condition will impact any cognizable liberty interests," and a condition "affecting a cognizable liberty interest must be 'supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing.'" *Sims*, 92 F.4th at 125 (quoting *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015)); *see also Robinson*, 134 F.4th at 111. Finally, special conditions must be "consistent with pertinent Sentencing

9

Commission policy statements." *United States v. Farooq*, 58 F.4th 687, 694 (2d Cir.

2023) (quoting *Eaglin*, 913 F.3d at 94).

      1.  <u>Electronic Search Condition</u>

The District Court acted within the bounds of its discretion in imposing the

electronic search condition, specifically, its requirements related to his electronic

devices.

On remand, the District Court explained that the electronic search condition

is "customary in this district" and that "if the defendant returns to drug dealing

or other unlawful conduct, there may be reasonable suspicion that evidence of that

behavior can be found on some electronic device." App'x at 126–27. The reference

to customary practice, even if true, is plainly inadequate to fulfill the procedural

duty to provide an "individualized assessment . . . on the record." *United States v.*

*Betts*, 886 F.3d 198, 202 (2d Cir. 2018). And the District Court's explanation

regarding the risk of Jimenez returning to drug crimes was phrased in a way that

might misleadingly suggest it was applicable to *any* defendant convicted of drug

crimes. However, the transcript reveals that the District Court conducted an

appropriately individualized assessment. The District Court commented and

relied on Jimenez's lengthy criminal record, including crimes of violence and

extensive involvement with drug trafficking, *see* App'x 106, 122, and his disciplinary record while in federal custody, including violations involving phone use, *see* App'x 107. The record also reveals that Jimenez used his phone to conduct the drug transactions at issue in this case, *see* App'x 120, and thus, the District Court's comments regarding the possibility of finding evidence of future wrongdoing on Jimenez's devices were rooted in the record. Overall, the District Court's assessment was sufficiently individualized and the basis for the electronic search condition was sufficiently articulated. *See United States v. Corsey*, 723 F.3d 366, 374 (2d Cir. 2013) (requiring that the sentencing judge "explain enough about the sentence for a reviewing court both to understand it and to assure itself that the judge considered the principles enunciated in federal statutes and the Guidelines").

We turn to whether the electronic search condition was, substantively, reasonably related to the relevant sentencing factors. As the parties' arguments suggest, this analysis is complex and cannot be satisfied by mere allusion to the appropriate factors. Left unchecked, the sentencing factors, including the need to deter criminal conduct and protect the public, can impermissibly and superficially be stretched to wrongly support imposing electronic search conditions in almost

24-1661
*United States v. Jimenez*

any case. Our own decisions have sometimes been less than rigorous in avoiding such generalized considerations; we have recently noted in dicta that such conditions "can be an important tool for probation officers to carry out" effective supervision. *United States v. Thompson*, 143 F.4th 169, 180 (2d Cir. 2025).

We must be wary where such high-level, generalized concerns are involved and relied upon by district courts and the government. "Exclusive reliance on . . . generalized considerations is inconsistent with the requirement that the district court make an 'individualized assessment' as to each defendant when determining whether to impose a special condition." *United States v. Oliveras*, 96 F.4th 298, 314 (2d Cir. 2024) (quoting *Eaglin*, 913 F.3d at 94). Moreover, special conditions must be *reasonably* related to the relevant sentencing factors, not merely related. *See Sims*, 92 F.4th at 126. And more specifically, the relevant sentencing factors ask whether a condition is likely to protect the public from a specific defendant's crimes, as opposed to criminality more generally. *See* U.S. Sent'g Guidelines Manual § 5D1.3(b) (U.S. Sent'g Comm'n 2025) (listing "the need to protect the public from further crimes *of the defendant*" as an appropriate consideration (emphasis added)).

*United States v. Jimenez*

There is reason to hesitate in imposing electronic search conditions in many cases. To start with the obvious, electronic search conditions are not part of the "mandatory" conditions of supervised release. *See* 18 U.S.C. § 3583(d). Nor are they included in the Guidelines list of "standard" discretionary conditions. *See* U.S. Sent'g Guidelines Manual § 5D1.3(b)(2) (U.S. Sent'g Comm'n 2025). Therefore, electronic search conditions have *not* been determined to be appropriate or advisable in every case by the relevant statutes, nor are they implicated so regularly as to be characterized as "standard" by the Guidelines. And as we have noted, such conditions potentially pose enormous consequences to criminal defendants' lives. *See United States v. Griffin*, 839 F. App'x 660, 661 n.5 (2d Cir. 2021) (summary order) (noting "the search condition's language appears to be unclear as to whether it is intended to apply to an employer's computer equipment or electronic devices furnished . . . for use in the employer's business, which could impact [a defendant's] future employment prospects"). District courts must rigorously ensure that electronic search conditions are *reasonably* related to the sentencing factors as applied to the *specific* defendant before them.

Of course, the parties dispute how that case-specific inquiry applies to this case. Our Circuit has clarified in recent months the circumstances under which an

electronic search condition is substantively reasonable. Most obviously, electronic search conditions will often be reasonably related to the sentencing factors where a defendant's "convictions involved sex offenses," because nearly all such offenses prosecuted under federal law involve the use of electronic devices. *See Robinson*, 134 F.4th at 112 (citing U.S. Sent'g Guidelines Manual § 5D1.3(d)(7)(C) (U.S. Sent'g Comm'n 2024)). In other cases, our precedents demonstrate that we tolerate such conditions in two limited scenarios. First, if the record demonstrates that the defendant instrumentalized an electronic device in the commission of the instant offense conduct and surrounding circumstances, we are likely to find that the condition is reasonable. Second, and more rarely, where the defendant presents an unusually high risk of reoffending, we may find the condition is reasonable. Jimenez falls squarely within these categories, and we conclude, based on this record, that the electronic condition is substantively reasonable.

First, where electronic devices were instrumentalized in the commission of the instant offense conduct and surrounding circumstances,[3] we have regularly

---

[3] This case does not require us to ascertain under what circumstances the use of an electronic device in a previous offense may justify a similar condition. But there is reason to believe that where an electronic device was instrumentalized in the commission of a *previous* offense, rather than the *instant* offense, the relationship between an electronic search condition and the sentencing factors is much weaker because the condition loses an entire pillar of support in the sentencing factors: the nature and circumstances of the instant offense. Though we have suggested, in non-precedential decisions, that "[w]e have frequently

held that an electronic search condition is permissible. *See, e.g., Lawrence*, 139 F.4th at 125 (defendant "used only a cellphone to sell drugs"); *United States v. Lewis*, 125 F.4th 69, 76 (2d Cir. 2025) (defendant "repeatedly used electronic devices to carry out the three fraudulent schemes charged"); *Robinson*, 134 F.4th at 112 (noting the condition "would be even more apparent if [defendant's] convictions involved . . . the use of electronics"); *United States v. Arguedas*, 134 F.4th 54, 70 (2d Cir. 2025) ("[T]he record reveals that Arguedas used electronic devices to document a number of his assaults and to commission violent acts against rival gang members.").

In such cases, an electronic search condition connects directly to the nature and circumstances of the offense at issue. *See Carlineo*, 998 F.3d at 536. Therefore, where the sentencing court determines that an electronic device was instrumentalized in the commission of the instant offense conduct, or the

---

approved of such conditions where the conduct underlying a conviction or prior conviction has involved the use of computers or other electronic devices," we have never squarely addressed the issue. *See, e.g., United States v. Thomas*, 827 F. App'x 72, 75 (2d Cir. 2020) (summary order); *United States v. Franco*, 733 F. App'x 13, 16 (2d Cir. 2018) (summary order). In *Thomas*, the defendant instrumentalized electronic devices in the "conduct leading up to his *instant* conviction," so it is not particularly useful in determining how to approach a case where that factor is absent. 827 F. App'x at 75 (emphasis added). And in *Franco*, the challenge to the electronic search condition was rejected at least in part because the defendant failed to challenge a substantially similar condition that he was already subject to. 733 F. App'x at 16.

surrounding circumstances, there is less concern that the court relied on the general notion that searches can help identify and deter criminal conduct.

Second, we have held that an electronic search condition may be appropriate – in rare circumstances where certain unusual factors are present – even if the underlying crime did not involve the instrumentalization of an electronic device. Indeed, "we have never held that an electronic search term would only be appropriate . . . if [a defendant's] convictions involved . . . the use of electronics." *Lawrence*, 139 F.4th at 125 (alterations in original) (quoting *Robinson*, 134 F.4th at 112).

Importantly though, this is a high bar that will not be reached in the vast majority of cases. For example, in *United States v. Robinson*, we relied on three specific facts to justify the condition: 1) the defendant's "prolific" criminal history including "nine criminal convictions before the age of 30," 2) the fact that the defendant "committed the instant offense while under post-release supervision," and 3) the fact that the defendant "lied to police in his post-arrest statement." 134 F.4th at 111. Given the confluence of these considerations, the Court determined that the record supported a finding that the electronic search condition was reasonably related to the defendant's history and characteristics. *Id.* But we also

noted that our holding was consistent with cases in which we had vacated electronic search conditions imposed on somewhat similar defendants with significant criminal histories because in *Robinson*, the defendant "ha[d] accumulated more prior adult criminal convictions than either of th[e] defendants [in other cases] and lied to law enforcement following his arrest, which distinguishe[d] his case." 134 F.4th at 112 n.5. Similarly, in *Thompson* we observed that an extensive "history of recidivism and the nature of [the defendant's] past crimes" including a crime "committed while [the defendant] was on parole supervision" and multiple sex offenses, justified the condition. 143 F.4th at 179. Likewise, in *Arguedas*, we opined that although the defendant "used electronic devices," the "severity of [his] conduct and his penchant for re-offending" could have provided an independently sufficient reason to impose an electronic search condition. 134 F.4th at 70. In that case, the defendant had a lengthy history of "murder, attempted murder, and other 'really appalling acts of violence'" including "offenses committed while on parole or probation." *Id.* at 62–63.

Taken together, our precedents dictate that to justify imposing an electronic search condition when an electronic device was not used in commission of the offense, the defendant's criminal history must be extremely lengthy *and* must

contain specific indicators – beyond the mere number of prior offenses – that the

defendant is unusually likely to commit new offenses while on supervised release.

As in *Robinson*, this is likely to require a record of unlawful conduct during a

previous term of supervision, or evidence that the defendant has been deceitful

toward supervising or law enforcement officers in the past. The combination of

these factors can, in some circumstances, demonstrate an extreme risk of

reoffending that supplies the necessary reasonable relationship to the sentencing

factors.

Turning to this case, the electronic search condition is reasonably related to

the sentencing factors because Jimenez used his phone to facilitate the drug

transactions with an undercover New York Police Department detective, and the

initial indictment included charges relating to those transactions. That Jimenez

pled guilty only to the possession of ammunition after a felony conviction charge

is no matter. The sentencing factors incorporate not only the formal elements of

the convicted crime, but also, the nature *and circumstances* of that offense. *See*

*Farooq*, 58 F.4th at 695 (considering both "the charged conduct and the conduct to

which [the defendant] pled guilty" in discussing the nature and circumstances of

the offense). Jimenez used an electronic device in the commission of the charged

24-1661
*United States v. Jimenez*

conduct, and therefore, the electronic search condition is justified. *See Lawrence*, 139 F.4th at 125.

Because the Government also points to the risk of re-offending as justification for the electronic search condition, we conclude that Jimenez's specific criminal history would not be enough to justify the electronic search condition on its own. As noted above, in *Robinson*, we expressly distinguished our decision not to vacate the electronic search condition in that case from other cases involving less severe records. One of those cases was Jimenez's first appeal. In *Robinson*, we noted that "Robinson ha[d] accumulated more prior adult criminal convictions than [Jimenez] and lied to law enforcement following his arrest." 134 F.4th at 112 n.5. Therefore, even if we were inclined to conclude that Jimenez's seven total convictions were enough to justify the condition on their own (which we are not), *Robinson* at least suggests that they are not. Furthermore, the record does not suggest that Jimenez had a history of committing new offenses while under supervision.[4]

---

[4] Jimenez's assertion that the electronic search condition "is broader than necessary" to achieve the relevant sentencing goals, *see* Appellant's Br. at 35, is unavailing. *See United States v. Lawrence*, 139 F.4th 115, 125 (2d Cir. 2025); *see also United States v. Oliveras*, 96 F.4th 298, 315 (2d Cir. 2024) (approving home searches requiring reasonable suspicion, noting "those conditions do not constitute a greater deprivation than reasonably necessary *because* they require reasonable suspicion" (emphasis in original)).

19

## 2. Community Service Condition

We also affirm the imposition of the special condition requiring Jimenez to perform community service for twenty hours a week while unemployed (and not excused from employment). On remand, the District Court explained that it imposed the community service condition because it did not "want [Jimenez] hanging around the neighborhood or hanging out at home doing nothing," and because the condition serves as "hopefully a motivator to the defendant to get a job and earn money legitimately." App'x at 128–29. In doing so, the District Court referenced Jimenez's "checkered work history." *Id.* at 128. In light of other aspects of the record discussed below, the District Court's explanation passes muster.

Before we reach the substantive reasonableness of the condition, however, we must examine whether the issues raised are ripe for review. "Ripeness is a constitutional prerequisite to [the] exercise of jurisdiction by federal courts." *United States v. Traficante*, 966 F.3d 99, 106 (2d Cir. 2020) (alteration in original) (quoting *United States v. Fell*, 360 F.3d 135, 139 (2d Cir. 2024)). And we have "long recognized that '[a] claim is not ripe if it depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (alteration in original) (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir.

2013)).  In contrast, "a purely legal question" is "eminently fit for judicial review." *United States v. Quinones*, 313 F.3d 49, 59 (2d Cir. 2002) (quoting *Nutritional Health All. v. Shalala*, 144 F.3d 220, 227 (2d Cir. 1998)).  Here, the community service provision requires twenty hours of community service per week *if* Jimenez is not employed and not excused from employment.  The Government suggests that fact ends the inquiry, and that Jimenez's argument is unripe.  But the contingent nature of the community service is not determinative.  Instead, we look to the specific legal issues raised by challenges to a condition to assess ripeness.  If those challenges solely rely on questions of law, they are ripe.

Our decision in *United States v. Villafane-Lozada* is instructive.  973 F.3d 147 (2d Cir. 2020).  There, the defendant challenged a "verification testing condition" on several grounds, including "that it (i) permits the use of computerized voice stress analysis, which [the defendant] sa[id] is not scientifically proven to be reliable, and (ii) improperly delegates [authority] to the probation officer."  *Id.* at 151.  Facing these two separate challenges to the same condition, we recognized that "[t]hough both challenges concern the same condition of supervision, the ripeness of each may differ depending on the issues they raise."  *Id.*  The reliability challenge, we concluded, was not ripe because it was impossible to tell whether

the technology used at the time of the defendant's future supervised release would be reliable.  *Id.*  On the other hand, we found that the delegation challenge was ripe because the defendant argued "the *already* realized delegation of judicial power to a probation officer" was impermissible.  *Id.*  Clearly then, ripeness is an issue-specific inquiry.

Like the delegation challenge in *Villafane-Lozada*, Jimenez's challenges to the community service condition permit resolution now.  *Villafane-Lozada* directs our attention to whether a challenge hinges on a "hypothetical" situation that may or may not occur, or on the plain terms of the condition itself.  *Id.*  Jimenez asserts that the community service condition is vague because it lacks clarifying terms, affords the Probation Office with too much discretion to decide when employment is excused, is based on a punitive purpose, and may result in Jimenez serving more than 400 hours of community service.  Despite the Government's arguments to the contrary, these challenges focus on aspects of the community service condition that are "*already* realized."  *Id.*  Determining whether the condition, as written, is vague, delegates too much authority, is punitive, or may require more than 400 hours of community service, does not require the Court to consider the possibility of hypothetical future events.  Each of these inquiries is concerned only with the

nature of the condition as it stands. *See id.* (holding challenge based on delegation to probation officer was ripe because it targeted "the probation officer's already-granted authority"); *see also United States v. Kunz*, 68 F.4th 748, 769–70 (2d Cir. 2023) (same); *United States v. Reeves*, 591 F.3d 77, 81 (2d Cir. 2010) (addressing vagueness challenge).

We pause to clarify two points. First, our decision in *United States v. Traficante* does not alter our conclusion that the challenges based on vagueness and delegation to probation are ripe for review. 966 F.3d at 105–07. Our decision in *Traficante* was pitched towards a peculiar procedural posture, where the district court had effectively replaced a condition originally imposed with a standing order. *Id.* at 104. In effect, the standing order "merely reiterate[d] the existing procedures for adding conditions if and when they become necessary during terms of supervised release." *Id.* Therefore, we reasoned that the standing order did "'not impose . . . any new obligations' beyond what the law already allows." *Id.* at 105 (alteration in original) (quoting *United States v. Jacques*, 321 F.3d 255, 265–66 (2d Cir. 2003)). In this context, the Court determined that a challenge to the standing order based on vagueness was unripe because it relied on the district court first making a particular finding for its terms to have any legal force. *Id.* at

23

106. We concluded that the overlapping delegation challenge was unripe for similar reasons: because the delegation itself was "conditioned on the district court" making a particular finding during the defendant's term of supervised release. *Id.* at 106–07; *see also United States v. Birkedahl*, 973 F.3d 49, 57 (2d Cir. 2020) (same); *United States v. Bryant*, 976 F.3d 165, 182 (2d Cir. 2020) (same). These holdings do not apply here. We expressly distinguished *Traficante* in *Villafane-Lozada*, recognizing that a "delegation [that] has already occurred and is not contingent on future judicial action" is ripe for review. 973 F.3d at 151. The same holds true here, for both the vagueness and delegation challenges, as there is no question that the challenged condition imposes new obligations "beyond what the law already allows." *Traficante*, 966 F.3d at 105.

Second, Jimenez's challenge based on the 400-hour threshold is focused on the legality of the condition's *current* terms and is fit for review. *Contra Traficante*, 966 F.3d at 106. A quick glance at the argument might suggest the opposite, given the uncertainty over whether the threshold will ever be reached. But Jimenez

24

argues that the condition is improper because it does not contain an express

maximum of 400 hours.[5]

Although they are ripe for review, Jimenez's challenges nevertheless fail on

the merits. First, the community service condition is not impermissibly vague.

The condition would be "unconstitutional if it is so vague that 'men of common

intelligence must necessarily guess at its meaning and differ as to its application.'"

*United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008) (quoting *United States v.

Simmons*, 343 F.3d 72, 81 (2d Cir. 2003)). But "[o]n the other hand, a good deal of

flexibility is afforded district courts." *Reeves*, 591 F.3d at 81. "[C]onditions need

not be cast in letters six feet high, or . . . describe every possible permutation,

---

[5]      Several non-precedential decisions reach a different conclusion, but those decisions rest on an error of law; as such, they have been undermined or expressly refuted already. In *United States v. Burdick*, the Court held a defendant's "overbreadth and vagueness" challenges were unripe. 789 F. App'x 886, 888–89 (2d Cir. 2019) (summary order). But that decision was premised on the notion that the district court retained the ability to remedy potential legal issues with the condition at a later date, through modification under 18 U.S.C. § 3583(e). *Id.* at 889. As we have since recognized, "'the illegality of a condition of supervised release is not a proper ground for modification under' 18 U.S.C. § 3583(e)(2)," and therefore, a district court's ability to modify conditions cannot justify delaying our review of the legal issues that the condition raises. *See Villafane-Lozada*, 973 F.3d at 152 (quoting *United States v. Lussier*, 104 F.3d 32, 34 (2d Cir. 1997)). Indeed, we have already expressly disposed of that aspect of *Burdick*. *See id.* at 152 n.3 (noting "we do not break from that panel's decision lightly"). In *United States v. Leone*, we primarily dismissed a vagueness challenge because it was meritless, not because it was unripe. 813 F. App'x 665, 669 (2d Cir. 2020) (summary order). Regardless, the Court's discussion of ripeness relied on *Burdick*. *Id.* Finally, in *United States v. Morrishow*, we rejected a challenge to a similar community service provision based on the notion that it was unclear whether the defendant would ever have to engage in community service, let alone do more than 400 hours of it. No. 23-7622, 2024 WL 4690524, at *3 (2d Cir. Nov. 6, 2024) (summary order). Again, that decision appeared to rely, at least in part, on the incorrect notion that the defendant was "free to return to the district court to request a modification." *Id.*

or . . . spell out every last, self-evident detail." *Id.* (alterations in original) (quoting *United States v. Johnson*, 446 F.3d 272, 280 (2d Cir. 2006)). Jimenez points to several purportedly crucial details that the District Court did not elucidate, including "when Jimenez's community service obligation would start, how the hours he owed would accrue (or not) from week to week, and under what circumstances the Probation Department could excuse Jimenez from this community service requirement." Appellant's Br. at 38–39. As the District Court expressly noted, "[t]here are known and identified reasons why the probation office excuses people from employment" including disability, schooling, and job training. App'x at 130. Reading those "known and identified" bases for excusal into the condition renders the condition sufficiently definite. And though there are meaningful differences in a court's discretion to impose employment and community service conditions, discussed below, the fact that Jimenez's unchallenged employment condition similarly lacks several of the terms purportedly missing from his challenged community service condition undermines Jimenez's argument.

Next, the community service condition is not punitive. Of course, punishment is not a permissible justification for a special condition. *See* U.S. Sent'g Guidelines Manual § 5D1.3(b) (U.S. Sent'g Comm'n 2025); 18 U.S.C. § 3583(c).

Contrary to Jimenez's assertions on appeal, however, the mere fact that a District Court imposed a condition to incentivize certain behaviors like maintaining employment does not make it punitive. If it were impermissible to impose a condition that is designed to "motivate Jimenez to 'get a job,'" district courts could never impose any condition requiring employment. Appellant's Br. at 42. Instead, such conditions are directly relevant to the pertinent sentencing factors such as Jimenez's rehabilitation.

Third, the community service condition does not impermissibly delegate authority to the probation office. "[A] district court may not delegate to the Probation Department decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *Matta*, 777 F.3d at 122. "In other words, the Probation Office may supervise and execute a sentence but may not fashion a sentence's terms." *Carlineo*, 998 F.3d at 538. The community service condition here indisputably vests some decision-making authority with the probation office. They determine whether Jimenez is excused from his employment obligations, and by extension, from his community service obligations. But these decisions do not amount to placing Jimenez's "liberty" in the probation office's hands. *Matta*, 777 F.3d at 122. Instead, the

special conditions merely permit the probation office to afford Jimenez *greater*

liberty, by exercising its discretion to excuse him from employment. The

discretion afforded to the probation office is additive, not subtractive, to Jimenez's

liberty, and therefore, does not constitute an improper delegation. *See United*

*States v. Floyd*, 840 F. App'x 625, 627–28 (2d Cir. 2021) (summary order) (rejecting

delegation challenge where "the Probation Office cannot decide whether to

impose the curfew in the first instance; it can only adjust the curfew times to

accommodate [the defendant]").

Fourth, the community service condition is reasonably related to the

relevant sentencing factors. As the District Court explained, such conditions are

pertinent to deterring further criminal conduct by ensuring the defendant stays

engaged in legal endeavors. *See* App'x at 129. Additionally, the District Court

appropriately tied the condition to Jimenez's specific history and characteristics,

noting his "checkered work history." *Id.* at 128. Indeed, Jimenez himself has

pointed out that employment and community service have helped rehabilitate him

in the past, and that certain periods of his criminal history overlapped with

periods of unproductivity. These connections adequately justify a community

service condition that is tied to a lack of employment.

Finally, to the extent Jimenez argues that the condition *could* result in more than 400 hours of community service as a standalone basis for vacating, the argument is unavailing. Jimenez's argument is based on our decision in *United States v. Parkins*, in which we vacated a special condition that imposed 695 hours of community service. 935 F.3d 63, 66, 68 (2d Cir. 2019). There, because conditions of supervised release must be "consistent with any pertinent policy statements issued by the Sentencing Commission," 18 U.S.C. § 3583(d), we were guided by the Sentencing Guidelines, which suggest that "[c]ommunity service generally should not be imposed in excess of 400 hours." U.S. Sent'g Guidelines Manual § 5F1.3 cmt. n.1 (U.S. Sent'g Comm'n 2025). Crucially though, we have never held that a condition is per se impermissible because it could lead to over 400 hours of community service. Our decision in *Parkins* establishes no bright line rule. We merely held that courts should "generally refrain" from imposing conditions that exceed the 400-hour threshold, and that when they do, there must be a compelling justification that distinguishes the defendant "from the generality of cases." *Parkins*, 935 F.3d at 66, 67–68 (premising its holding on the district court's "inadequate, individualized justification for a higher amount"); *United States v. Kim*, 790 F. App'x 321, 324 (2d Cir. 2019) (summary order) (concluding that *Parkins*

demands "a more comprehensive justification" where a condition exceeds the 400-hour threshold).

Here, the specific condition imposed is uniquely justified and withstands comparison to *Parkins*. There, we noted that "the district court did not find that Parkins was in need of any of the training that community service might provide, and there is no reason on this record to believe that 695 hours of community service is required for Parkins to achieve the benefit such service offers." *Parkins*, 935 F.3d at 67. We also expressed concern that the justification of keeping the defendant productive "lack[ed] a limiting principle that would allow an evaluation of how much community service is 'greater than necessary' to keep [the defendant] off the street" and that the condition might actually "disrupt[]" his productive occupation. *Id.* The condition here does not present those concerns because it is contingent on Jimenez's lack of employment (or excuse from employment). Therefore, the condition incorporates its own limiting principle and ensures that community service will not interfere with productive employment. And as discussed above, the District Court did not rely solely on general ideas about the benefits of productivity. Jimenez himself attested to the benefits of remaining productive and the tendency to revert to criminality when

unemployed.  *See* Dkt. No. 59 at 4–8 (noting Jimenez "reverted to selling drugs"
and "returned to poor decision-making" during periods of unemployment).  On
this record, and with these limitations, the community service condition is justified
despite the possibility of exceeding 400 hours.

        3.  <u>Mental Health Treatment Condition</u>

      Finally, we affirm the imposition of the mental health treatment condition.
The District Court explained that it imposed the mental health treatment condition
because it "believe[d] [Jimenez] could benefit enormously," specifically in the
employment context, by helping him "work[] out problems at home, problems
with [his] employer, problems with [his] coworkers."  App'x at 124–25.
Additionally, the District Court asserted that "one of the risks of recidivism is not
being able to change your mind-set in a way that is helpful to reentry in society."
*Id.*  Such explanations, on their own, would likely be insufficient because they rely
on generalized ideas about the benefit of therapy rather than Jimenez's individual
circumstances.  But the District Court proceeded to explain that it thought "mental
health treatment would, hopefully, assist Mr. Jimenez in dealing with his past and
present demons that have prevented him from achieving the goals that he
legitimately has to support himself and his family and not returning to a life of

crime." *Id.* at 131–32. And finally, the District Court stated that "looking at Mr. Jimenez's personal history here, he needs [mental health treatment]." *Id.* at 132. These statements demonstrate that the District Court properly imposed the condition based on Jimenez's individual characteristics.

Additionally, the condition is substantively reasonable as it is reasonably related to the relevant sentencing factors. Jimenez expressed feelings of loneliness, grief, self-destruction, and stress in his submissions to the District Court, expressly connecting such feelings to his involvement in criminal activity. In other portions of the record, Jimenez suggests that previous interactions with mental health services were helpful. And at his original sentencing, Jimenez told the Court: "I was not in the right mindset when I made this mistake," and expressed a desire "to use the resources available to [him] to get the support [he needs]." App'x at 83. Thus, the mental health treatment condition does not rely on the general notion that therapy is helpful for everyone, but instead, is reasonably related to both Jimenez's history and characteristics and the need to deter criminal conduct. Jimenez's challenges do not alter this conclusion.

Second, the condition is not vague. Jimenez contends that the condition "has no clear content, purpose, or goal," and therefore, lacks clarity on "what

'successful participation' requires," in part because he has not been diagnosed with any specific mental health condition.  Reply Br. at 16.  In doing so, Jimenez relies on our decision in *Carlineo*, where we vacated a condition which required the defendant "to participate in [a] program . . . [which] could include a sentencing circle and a listening circle" and which might require the defendant to "listen to stories about Muslim refugees or people who suffered from violence for being Muslim."  998 F.3d at 536–37.  The condition in *Carlineo* lacked specificity regarding what activities would actually take place in the sentencing and listening circles, and therefore, did not provide the defendant with notice of what "could trigger a charge of violating the condition."  *Id.* at 537.  In contrast, the mental health treatment condition here merely requires participation in a counseling program, including regular therapy sessions, the details of which will be determined by service providers and probation officers.  As such, there is no notice issue.  It is clear "what conduct could trigger a charge of violating the condition," *id.*: failing to participate in the program and the sessions.  Indeed, we expressly

distinguished the condition at issue in *Carlineo* from "special conditions such as substance abuse and mental health treatment." *Id.*[6]

Third, the condition does not impermissibly delegate authority to probation officers. It does not entitle probation officers to impose additional burdens on Jimenez, such as giving them the authority to decide whether Jimenez participates in treatment *at all*. *Contra United States v. Harris*, 164 F.4th 181, 197 (2d Cir. 2026). Instead, it merely affords probation officers the authority to handle certain details of the treatment, a dynamic that is plainly permissible. *See Villafane-Lozada*, 973 F.3d at 153 ("[T]he choice between various outpatient therapy options . . . is routinely delegated to probation officers."); *Matta*, 777 F.3d at 122 ("[A] district court may delegate to a probation officer decisionmaking authority over certain minor details of supervised release—for example, the selection of a therapy provider or treatment schedule."); *contra United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001) (vacating a similar condition where defendant was "required to

---

[6] Defendant's contention that his lack of a specific mental health diagnosis muddies the waters on what "successful participation" looks like, Reply Br. at 16, is contradicted by the terms of the condition, which specifically requires cognitive behavioral therapy "to the extent practicable and as determined to be appropriate by the therapy provider." App'x at 141. As discussed below, we have frequently affirmed similar conditions that are not expressly tailored to a specific diagnosis. If anything, the condition imposed in this case provides more clarity, not less, by prioritizing a specific kind of treatment.

participate in a mental health intervention only if directed to do so by his probation officer").

## B. Challenge to Term of Imprisonment

We affirm the District Court's refusal to revisit Jimenez's sentence of imprisonment on remand, which we review de novo as a question of law. Jimenez's chief contention is that a development in our precedent on the application of certain Guidelines provisions justifies a reduction in his sentence. Indeed, pursuant to *United States v. Gibson*, a case we decided after Jimenez's original sentence but before our order remanding for resentencing, his Guidelines range might be lower if he were sentenced for the first time today. 55 F.4th 153 (2d Cir. 2022). In *Gibson*, we determined that crimes under New York Penal Law § 220.39(1) do not categorically qualify as crimes of a "controlled substance offense" under U.S.S.G. § 4B1.1. *Id.* at 167. And here, Jimenez's prior conviction under § 220.39(1) was used as a predicate "controlled substance offense" to determine his base offense level, albeit under a separate Guidelines provision, U.S.S.G. § 2K2.1(a)(2).

Such changes in the law may justify a district court's venturing beyond the scope of a limited remand for resentencing in some cases. "In general, when we

remand to a district court for resentencing, that remand is 'for limited, and not *de novo* sentencing.'" *United States v. Valente*, 915 F.3d 916, 924 (2d Cir. 2019) (quoting *United States v. Malki*, 718 F.3d 178, 182 (2d Cir. 2013)).[7] But there is an exception to the general rule. Where there are "compelling circumstances," including but not limited to "an intervening change in controlling law," a district court can exceed the confines of its limited review on remand and reconsider aspects of its previous decision. *Id.* (quoting *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009)). Jimenez asserts that this case falls within this exception. After all, our decision in *Gibson* is an intervening change in the controlling law on an issue key to the calculation of his sentence.

Crucially though, this case involves a plainly applicable appeal waiver. Jimenez expressly agreed that he would "not file a direct appeal . . . of any sentence within or below the Stipulated Guidelines Range of 84 to 105 months' imprisonment." App'x at 26. Jimenez was sentenced to 105 months' imprisonment, and thus, the appeal waiver applies.

---

[7]    In his reply, Jimenez cites *Valente* for the proposition that "'an intervening change in controlling law' allows a defendant to raise issues that were 'previously waived.'" Reply Br. 20 (quoting *Valente*, 915 F.3d at 924). But *Valente* and the cases it cites do not deal with a binding appeal waiver. Instead, they stand for the separate proposition that a district court, on limited remand, can consider issues that were not previously raised before the district court if there is a compelling reason to do so.

"We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into." *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001). That remains true even when the grounds for appeal relate to a subsequent change in our precedent regarding the calculation of the defendant's sentence. *See United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) (A defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver."); *see also Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (holding change in law governing a defendant's sentence did not justify putting aside a waiver).

Here, though *Gibson* was decided prior to our order remanding this case for resentencing (and thus, could have been raised for this Court's consideration on Jimenez's first appeal), Jimenez first raised the argument that his term of imprisonment should be reduced before the District Court at resentencing. Had Jimenez raised his argument based on *Gibson* to this Court on his first appeal, there would have been little doubt that such a challenge to his sentence was barred by the appeal waiver. *See Morgan*, 406 F.3d at 137. The question, then, is whether the

fact that Jimenez waited to raise the issue until remand before the District Court changes that result.

We hold that it does not. Though the posture of this case enables Jimenez to avail himself of the law permitting district courts to reach issues outside the scope of their limited remand based on subsequent changes in the law, his appeal waiver nevertheless precludes his argument. To hold otherwise would create an unwarranted exception to an otherwise enforceable appeal waiver whenever a case is remanded for resentencing. Though an intervening change in controlling law may constitute a compelling reason for a district court to venture beyond the scope of its limited remand *in some cases*, we hold that an intervening change in controlling law is *not* a compelling reason where the defendant is bound by an appeal waiver that would have foreclosed the sentencing argument were it raised on appeal.

## III.   <u>Conclusion</u>

In summary, we hold that the three special conditions were procedurally and substantively reasonable. In doing so, we reiterate that special conditions must be reasonably related to the appropriate sentencing factors as they apply to the specific defendant before the court. We also clarify that a challenge to a special

38

24-1661
*United States v. Jimenez*

condition is not unripe merely because the condition itself implicates the occurrence of future events. Instead, courts must engage in an issue-specific analysis. Finally, where a defendant has pled guilty and agreed to an appeal waiver, the defendant may not attempt to circumvent the force of that waiver by asking a district court on remand to consider arguments that would have been foreclosed had they been raised on appeal. For the foregoing reasons, the District Court's judgment is AFFIRMED.